UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BATES,

    Plaintiff,

v.                                                    Case No. 08-13531

PROVIDENT LIFE AND                  HONORABLE AVERN COHN
ACCIDENT INSURANCE COMPANY,

    Defendant.

_____/

**<u>MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I.  Introduction

This is an action to collect disability insurance benefits.  Plaintiff Michael C. Bates (Bates) is suing defendant Provident Life and Accident Insurance Company (Provident) claiming breach of contract for failing to pay his claim for benefits.  Before the Court is Bates' motion for partial summary judgment on Provident's affirmative defenses of ERISA[1] preemption and failure to exhaust administrative remedies.  As will be explained, the question is whether Bates' insurance policy, which is no longer part of an ERISA plan, continues to be governed by ERISA because it was originally part of an ERISA plan.  The answer is "no."  Accordingly, Bates' motion will be granted.

II.  Background

A.

The underlying facts are not in dispute.  Bates was employed by D&B

---

[1] Employment Retirement and Income Security Act, 29 U.S.C. § 1001 <u>et seq</u>.

Engineering, Inc. (D&B) beginning November 1, 1986 through November 1, 2003.  In 1986, Provident issued five disability insurance polices to employees of D&B; Bates, his brother Gary Bates, Richard Cook, James Storks, and Robert White.  At that time, D&B was owned by Bates and Gary Bates.  The parties agree that as a result of the purchase and issuance of the policies, Provident treated each of the policies as being part on an employee "welfare benefit plan" established by the employer, D&B, and governed by ERISA.  For about six years, the policies were renewed by D&B on an annual basis.  In 1993, D&B did not renew James Storks's policy.  In 1994, D&B did not renew Robert White's policy.  In 1995, D&B did not renew Richard Cook's or Gary Bates' policy.  Thus, as of 1995, Bates was the only person at D&B receiving disability insurance coverage through the company.  Also in 1995, Bates became the sole shareholder of D&B.[2]  D&B continued to pay the premiums on Bates' policy through 2003 at which time the company dissolved and Bates began paying the premium himself.

B.

On July 24, 008, Bates filed a breach of contract suit in state court against Provident, claiming that he has been "residually disabled" since 2001 and "totally disabled" as of 2003 and Provident has refused to pay benefits due, exceeding $10,000.00 per month.

On August 15, 2008, Provident removed the case to this court asserting

---

[2]In its response, Provident says that it has not received sufficient documentation to establish that Bates became the sole shareholder of D&B in 1995.  In his reply however, Bates says that such information has now been provided.  Provident does not appear to contest the information.

jurisdiction was proper because Bates' complaint presented a federal question under ERISA and because the parties are diverse. Provident also filed an answer and affirmative defenses, asserting that Bates' breach of contract claim is preempted by ERISA and Bates has failed to exhaust his administrative remedies required under ERISA.

Bates then filed the instant motion. Bates says that because ERISA denial of benefits cases are limited in scope of allowable discovery and require a pretrial format different from a state law breach of contract action, he seeks a ruling as to whether ERISA applies to his claim for benefits.

### III.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for

summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV.  Analysis

There are two different types of ERISA employee benefit plans: "employee welfare benefit plans" and "employee pension benefit plans."  29 U.S.C. § 1002(3).  Bates' disability insurance plan is considered an "employee welfare benefit plan."  29 U.S.C. §1002(1).  The term "employee benefit plan" is defined and clarified in 29 C.F.R. § 2510.3-3.  Section 2510.3-3(a) first states that ERISA Title I protections only apply to "employee benefit plans."  29 C.F.R. § 2510.3-3(a).  Sections 2510.3-3(b) and (c) state that certain plans are excluded from the definition of "employee benefit plan:"

> (b) Plans without employees.  For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section.  For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I.  However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I.  Similarly, partnership buyout agreements described in section 736 of the Internal Revenue Code of 1954 will not be subject to title I.

> (c) Employees. For purposes of this section:
>
> (1) **An individual** and his or her spouse **shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual** or by the individual and his or her spouse ...

29 C.F.R. § 2510-3.3(b), (c) (emphasis added). As one district court aptly explained:

> The language of § 2510-3.3(a) states that "plans without employees" are not "employee benefit plans" and will not be covered by ERISA Title I. Section 2510.3-3(c)(1) then explains that an individual and his or her spouse who wholly own a business are not employees for purposes of this section. Therefore, any plan that has as its only participant a sole owner and his or her spouse, is a "plan without employees" and does not qualify for Title I ERISA coverage. A plan that includes at least one employee in addition to the sole owner, however, will be covered by Title I ERISA coverage.

Meizner v. Surburban Bank & Trust Co., 397 F. Supp. 2d. 952, 954-55(N.D. Ill. 2005) (footnote omitted).[3]

Bates argues that although the policy was originally issued as part on an employee benefit plan governed by ERISA, as of 1995 when Bates became the sole participant and sole shareholder of D&B, it became a "plan without employees" which is not considered to be an "employee benefit plan" subject to ERISA. The Court agrees.

---

[3] The district court in Meizner noted that this interpretation of § 2510.3-3 is consistent with the Supreme Court's decision in Yates v. Hendon, 541 U.S. 1 (2004). In Yates, the Supreme Court considered whether a sole owner could participate in a plan that qualified as an "employee benefit plan" under § 2510.3-3(a). In resolving this related issue, the Supreme Court clarified the meaning of § 2510.3-3(c). The Supreme Court stated that a sole shareholder may "participate in a pension plan covered by [ERISA] . . . if the plan covers one or more employees other than the business owner and his or her spouse." Id. at 6. The Supreme Court reaffirmed this position later in the opinion in stating that "[p]lans that cover only sole owners or partners and their spouses, the regulation instructs, fall outside Title I's domain. Plans covering working owners and their nonowner employees, on the other hand, fall entirely within ERISA's compass." Id. at 21.

The district court in Meizner faced a similar issue. In Meizner, plaintiff was the sole owner of a psychiatric clinic that established an employee retirement plan in 1980 governed by ERISA. At the time the plan was instituted, there were two participants, plaintiff and one of his employees. In 1994, the employee retired and plaintiff became the sole participant in the plan. Plaintiff sued the trustee of the pension plan and claimed numerous violations of ERISA regarding the administration of the plan between 2000 and 2003. The defendant trustee moved for summary judgment, arguing that the plan did not qualify as and ERISA plan between 2000 and 2003 because plaintiff was the sole participant and sole shareholder. Plaintiff argued, as Provident does here, that once an "employee benefit plan" qualifies for ERISA coverage, it does not lose that coverage simply because the plan is reduced to a single participant. Defendant argued that the plan became a "plan without employees" in 1994 and therefore was no longer subject to ERISA. The district court agreed with defendant. In so doing, it relied on a Ninth Circuit case and policy considerations behind ERISA, explaining:

> The question before this court was addressed in In re Fred Lowenschuss, 171 F.3d 673 (9th Cir.1999). In Lowenschuss, the issue was whether a debtor's interest in his pension plan would be shielded by ERISA in a bankruptcy proceeding. Id. at 676. A necessary part of this inquiry was to determine if the plan was an "employee benefit plan" and qualified for ERISA coverage. Lowenschuss was both the sole owner of a law firm and the sole remaining member of its pension plan. Id. at 680-81. At one point in time, there had been another employee participant in the pension plan, but that employee had ceased participation seven years before the bankruptcy proceeding. Id. at 680. The court held that even though the plan had qualified as an "employee benefit plan" in the past when the additional employee participated, the plan lost its ERISA coverage when the sole owner became the sole participant in the plan because it had become a "plan without employees." Id. at 680-81.
>
> Lowenschuss held that it is appropriate to evaluate a plan's ERISA qualification based on its composition at the time of the events in question in the action before the court. Id. at 680. Lowenschuss is consistent with the wording of § 2510.3-3.

6

>The regulation states that "the term 'employee benefit plan' shall not include any plan . . . under which no employees are participants covered under the plan." (emphasis added). 29 C.F.R. § 2510.3-3(b). The regulation is written in the present tense and makes no mention of past employee participation.
>
>The decision is also consistent with the underlying purpose of § 2510-3.3. In Lowenschuss, the court explained that ERISA was designed "'to remedy abuses by employers who manage pension plan assets held in trust for workers in traditional employer-employee relationships' . . . [and that] self-employed owners of companies that sponsor pension plans were deliberately excluded from ERISA's protections because these individuals can protect their own beneficial interests." Lowenschuss, 171 F.3d at 680 (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). To give these protections to a sole owner simply because six years ago the plan happened to have an additional participant would undermine this purpose.
>
>In the present case, it is undisputed that Plaintiff was the sole owner of Southwest Psychiatric and the sole participant in the Southwest Plan between January, 2000 and February, 2003. Therefore, I find that between January, 2000 and February, 2003, the Southwest Plan was a "plan without employees" under § 2510.3-3(b). The Southwest Plan does not qualify for ERISA coverage during this time period and Plaintiff cannot bring the actions stated in Counts I and II of his complaint. As a result, I grant Defendant's motion for summary judgment on Counts I and II of the complaint.

Meizner, 397 F. Supp. 2d at 956-57.

The same result as in Meizner and Lowenschuss obtains here. The plan for disability insurance benefits was an "employee benefit plan" governed by ERISA upon its creation in 1986. However, over the course of the next nine years, all of the employees except Bates left D&B's employ. As of 1995, Bates was the sole shareholder and sole employee of D&B and the only person remaining in the plan who continued to have coverage. In 1995, the plan became a "plan without employees" within the meaning of ERISA and no longer subject to its requirements. This is consistent with the regulations and the policy underlying ERISA. As such, Bates' claim for benefits alleged to be due as of 2003 was made after the plan ceased to be an

ERISA plan.

Provident, however, cites Mass. Cas. Ins. Co. v. Reynolds, 113 F.3d 1450 (6th Cir. 1997) as support for its argument that an insurance policy which was, but no longer is, part of an ERISA plan continues to be governed by ERISA. In Reynolds, the defendant was covered by a disability insurance policy governed by ERISA issued through his employer. When Reynolds' employment ended in 1992, he continued to pay the premiums himself and filed a claim for disability insurance benefits one month after he left his employment. Defendant argued that once he left his employment, his policy was "converted" to an individual insurance policy not governed by ERISA. The Sixth Circuit rejected this argument, holding that defendant's post-employment coverage was more similar to "continuation coverage" which was subject to ERISA; therefore, defendant's state law claims against plaintiff were preempted.

Provident's reliance on Reynolds is misplaced.[4] Reynolds did not deal with the situation where an ERISA plan has become a "plan without employees" prior to an insured making a claim for benefits. Indeed, there is nothing in Reynolds to suggest that the plan ceased to exist prior to defendant making a claim. Rather, the issue as seen by the Sixth Circuit was whether defendant's coverage was "converted" or

---

[4]Provident also relies on Painter v. Golden Rule Ins. Co., 121 F.3d 436 (9th Cir. 1997). Painter, like Reynolds, involved an individual conversion policy which plaintiff purchased after her employment was terminated. Although the underlying employee benefit plan had expired at the time plaintiff purchased the conversion policy, the Ninth Circuit held that the conversion policy was still part of an ERISA plan. The Ninth Circuit, however, did not address the meaning of an "employee benefit plan" but rather focused its analysis on plaintiff's conversion rights which flowed from the ERISA plan. The fact that the plan no longer existed was not mentioned and the court simply assumed that the applicable ERISA regulation extended to conversion policies. The Court does not find Painter persuasive.

8

"continuation." The Sixth Circuit did not address or discuss the meaning of "employee benefit plan" or what happens when an employee benefit plan becomes a "plan without employees" or otherwise consider § 2510-3.3.

V.  Conclusion

For the reasons stated above, Bates' claim for disability benefits is not governed by ERISA. Accordingly, Bates' motion for partial summary judgment on Provident's affirmative defenses of ERISA preemption and failure to exhaust administrative remedies is GRANTED. The case will proceed on Bates' state law claim for breach of contract.

SO ORDERED.


     S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: January 29, 2009


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 29, 2009, by electronic and/or ordinary mail.

     S/Julie Owens
Case Manager, (313) 234-5160